Case: 1:18-cv-00295-CAB  Doc #: 1-1 Filed: 02/06/18  1 of 50.  PageID #: 5

Print

# CASE INFORMATION

## CV-18-891195 FOUNDERS REAL ESTATE INVESTMENT TRUST vs. KINSALE INSURANCE COMPANY

Docket Information

| Filing Date | Side | Type | Description | Image |
|---|---|---|---|---|
| 02/02/2018 | D1 | NT | NOTICE OF APPEARANCE, FILED D1 KINSALE INSURANCE COMPANY WILLIAM H FALIN 0038839. NOTICE OF APPEARANCE OF COUNSEL | 📄 |
| 01/31/2018 | N/A | JE | CMC BY PHONE SET FOR 02/22/2018 AT 09:45 AM BY TELEPHONE. CASE MANAGEMENT CONFERENCE (CMC) WILL BE CONDUCTED BY TELEPHONE WITH THE COURT'S STAFF ATTORNEY. PLAINTIFF'S COUNSEL SHALL INITIATE CONFERENCE CALL WITH ALL OTHER PARTIES AND CONTACT THE COURT'S STAFF ATTORNEY, JAYNE JAKUBAITIS (216-443-8611) PROMPTLY AT THE APPOINTED TIME. PARTIES SHALL HAVE THEIR CALENDARS AVAILABLE AND BE PREPARED TO DISCUSS SERVICE ISSUES, DISCOVERY PROGRESS, SCHEDULING MATTERS, AND ALTERNATIVE DISPUTE RESOLUTION OPTIONS. THE PARTIES SHOULD NOT WAIT FOR THE CMC BEFORE BEGINNING TO CONDUCT DISCOVERY. ANY PARTY WHO FAILS TO PARTICIPATE IN THE CMC WILL BE DEEMED TO HAVE ACCEPTED THE SCHEDULING ORDER ESTABLISHED BY THE COURT. PARTIES MAY REQUEST THAT THE CASE MANAGEMENT CONFERENCE BE HELD IN PERSON WITH THE COURT BY FILING A MOTION AT LEAST SEVEN DAYS PRIOR TO THE SCHEDULED CASE MANAGEMENT CONFERENCE. NOTICE ISSUED | 📄 |
| 01/22/2018 | P1 | MO | MOTION FILED FOR P1 FOUNDERS REAL ESTATE INVESTMENT TRUST PAUL W FLOWERS 0046625 PLAINTIFF'S MOTION FOR ORDER COMPELLING STATUTORY SECURITY BOND | 📄 |
| 01/11/2018 | N/A | SR | FEDEX RECEIPT NO. 34202091 DELIVERED BY FEDEX 01/10/2018 KINSALE INSURANCE COMPANY PROCESSED BY COC 01/11/2018. | |
| 01/05/2018 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 01/05/2018 | D1 | CS | WRIT FEE | |
| 01/05/2018 | D1 | SR | SUMS COMPLAINT(34202091) SENT BY FEDERAL EXPRESS. TO: KINSALE INSURANCE COMPANY 2221 EDWARD HOLLAND DRIVE SUITE 600 RICHMOND, VA 23230 | 📄 |
| 01/05/2018 | N/A | SF | JUDGE CASSANDRA COLLIER-WILLIAMS ASSIGNED (RANDOM); RE-FILED CASE, REASSIGNED TO ORIGINAL JUDGE, JUDGE BRENDAN J SHEEHAN | |
| 01/05/2018 | N/A | SF | JUDGE CASSANDRA COLLIER-WILLIAMS ASSIGNED (RANDOM) | |
| 01/05/2018 | P1 | SF | LEGAL RESEARCH | |
| 01/05/2018 | P1 | SF | LEGAL NEWS | |
| 01/05/2018 | P1 | SF | LEGAL AID | |
| 01/05/2018 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 01/05/2018 | P1 | SF | COMPUTER FEE | |
| 01/05/2018 | P1 | SF | CLERK'S FEE | |
| 01/05/2018 | P1 | SF | DEPOSIT AMOUNT PAID PAUL W FLOWERS | |
| 01/05/2018 | N/A | SF | CASE FILED: COMPLAINT | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
For questions/comments please click here.

Copyright © 2018 PROWARE. All Rights Reserved. 1.1.172

**COMPOSITE EXHIBIT A**



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed:**
**January 5, 2018 15:02**

By: PAUL W. FLOWERS 0046625

Confirmation Nbr. 1266635

FOUNDERS REAL ESTATE INVESTMENT TRUST          CV 18 891195

      vs.

                                                      **Judge:**  BRENDAN J. SHEEHAN

KINSALE INSURANCE COMPANY

**Pages Filed:**  73

## IN THE OHIO COURT OF COMMON PLEAS
## CUYAHOGA COUNTY

| | |
|---|---|
| **FOUNDERS REAL ESTATE INVESTMENT TRUST** | ) **CASE NO.** |
| 23775 Commerce Park Road | ) |
| Beachwood, OH  44122 | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **COMPLAINT FOR BAD FAITH** |
| **vs.** | ) **INSURANCE PRACTICE DAMAGES** |
| | ) |
| **KINSALE INSURANCE** | ) **[JURY DEMAND ENDORSED** |
| **COMPANY** | ) **HEREON]** |
| 2221 Edward Holland Drive, Suite 600 | ) |
| Richmond, VA 23230 | ) |
| | ) |
| **Defendant** | ) |
| | ) |

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

### COMPLAINT

Plaintiff, Founders Real Estate Investment Trust ("Founders"), states as its Complaint for declaratory relief and damages against Defendant, Kinsale Insurance Company ("Kinsale"), as follows:

### Introduction

1.      In this refiled action, Plaintiff Founders is seeking damages only upon the remaining claim for bad faith insurance practices.  In an Interim Award  that was issued in an earlier arbitration proceeding, a finding was entered that Defendant Kinsale had unjustifiably denied coverage under a standard Commercial General Liability Policy.  *Apx. 0001-3, attached.*  A Final Award of $101,730.57 was imposed against the insurer, which has been fully paid.  *Id., 0006.*  At Defendant Kinsale's urging, however, the arbitration panel determined that they lacked jurisdiction to adjudicate Plaintiff's claim of bad faith.  *Id., 0003.*  Plaintiff now seeks a final determination of this remaining cause of action.

**Background**

2.      Plaintiff Founders is a real estate investment trust licensed and organized under the laws of the State of Indiana, authorized to conduct business in Ohio, and maintaining a principal place of business in Cuyahoga County.  Plaintiff owns, leases, and manages commercial properties in several states, including Tennessee.

3.      Defendant Kinsale is an insurance company that has maintained a presence, transacted business, and/or insured risks in the State of Ohio, including Cuyahoga County.

4.      At all times relevant to this action, Plaintiff Founders was covered under a commercial general liability policy ("Policy") that had been purchased from Defendant Kinsale.  A copy of the policy that was in effect from January 1, 2013 to January 1, 2014 with an occurrence limit of one million dollars and a general aggregate limit of two million dollars is attached at Apx. 0007-61.

5.      Defendant Kinsale sold the policy through broker Schneider-Dorsey, Inc. ("Schneider-Dorsey"), which is based in Cuyahoga County, Ohio.

6.      Plaintiff Founders was a named insured under the Policy at all times relevant to this action.  *Apx. 0008.*

7.      At all times relevant to this action, Defendant's Policy covered Plaintiff's occurrences airing from operations as a commercial landlord, including those conducted at 2435 Blackburn Road., Cleveland, Tennessee (the "Covered Property").  *Apx. 00029.*

8.      At all times relevant to this action, Plaintiff Founders was in full compliance with the terms and conditions of Defendant's policy.

9.      During the period that the policy was in force, civil claims arose and were commenced against Plaintiff Founders seeking property damages as a result of alleged

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

2

occurrences that had arisen from the Covered Property. *Conrad v. Founders Real Estate Investment Trust*, Bradley TN Chancery Court, Case No. 2013-CV-304; *Humberd v. Founders Real Estate Investment Trust*, Bradley TN Chancery Court, Case No. 2014-CV-151 (collectively the "Lawsuits").

10.     The Lawsuits included allegations that Plaintiff Founders and others had negligently installed and maintained a culvert, drainage pipe, and related equipment that altered the flow of a nearby creek and caused damages to property.

11.     The Lawsuits alleged *inter alia* that the property damages arose out of Plaintiff Founders' routine and regular maintenance activities, including the purported failure to maintain a drainage ditch on or attendant to the Covered Property.

12.     There were no allegations in the Lawsuits that Plaintiff Founders intentionally inflicted any bodily injury or property damage that would be excluded under the Policy.

**The Denial of Coverage**

13.     On January 8, 2014, Defendant Kinsale was advised of the Lawsuits through a Notice of Claim that included a copy of the Conrads' Complaint.

14.     Kinsale Supervisor Christine Hoggan assigned the request for coverage to Claims Examiner Ashley Driscoll ("Driscoll"), who had started working for the insurer approximately seven months earlier.  Supervisor Hoggan issued an e-mail to Driscoll early the next morning at 8:55 a.m. on January 9, 2014 stating that:

> Please handle this new lawsuit.  <u>Please reach out to the insured and let them know there is no coverage</u>.  It appears that they did some development to a parcel of land.  The application notes the TN location as being a strip mall that is 68% vacant.  We insured these risks as a premises only policy. We did not insure them for their land development activities. There is a construction exclusion, the designated premises exclusion and the classification limitation that would all apply in this instance.  Please draft up a coverage denial if you agree. I already printed the complaint. [emphasis added]

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

3

15.    Claims Examiner Driscoll was aware that one of these requirements imposed upon insurers doing business in Ohio is to conduct a full investigation of a claim for coverage by an insured.    This included determining whether covered premises are involved.    An insurer cannot simply accept the complaint's allegations as correct.    An affirmative effort has to be undertaken to gather necessary information, as an adjuster may not simply wait for others to furnish the information that is needed to properly evaluate the claim.

16.    But on the morning of January 10, 2014 at 9:56 a.m., which was just two days after the claim for coverage had been received, Claims Examiner Driscoll advised Founders' representative that:

> *** I want to let you know that Kinsale will be issuing a coverage declination.  The Kinsale Policy insures risk as a premises only policy and does not insure you for land development activities.  I will send you a formal letter within the next couple of weeks with our decision to deny coverage but I wanted to let you know as soon as possible that Kinsale will not be appointing and retaining counsel on your behalf. [emphasis added]

At that point in time, Kinsale possessed only the Notice of Claim and the Conrad Complaint.

17.    Roughly an hour and a half after Claims Examiner Driscoll issued her January 10 e-mail, Schneider-Dorsey Representative Carol Salupo ("Salupo") responded by identifying the errors in the coverage denial and explaining why both indemnity and a defense against the Tennessee Lawsuits were owed to Founders.

18.    A few days later on January 15, 2014, Scott Schneider ("Schneider") of Schneider-Dorsey e-mailed Kinsale Claims Examiner Driscoll urging her to recognize her misunderstandings and accept coverage under the Policy.

19.    The next day, the wholesale insurers at Westrope & Associates, n.k.a. RT

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

4

Specialty ("RT Specialty") weighed-in, which was a wholesale broker that had also been involved in selling the policy to Plaintiff Founders.  Senior Claims Specialist Dennis Steeves advised Kinsale Claims Examiner Driscoll that:

> *** The complaint alleges that the policyholder had a duty to insure that the premises are properly maintained and does not pose a threat of damage to adjacent properties.  The policy provides coverage for property damage arising out of the ownership, maintenance or use of the premises.  <u>At the very least, the insured should be owed a defense based on their duty to properly maintain the premises.</u> [emphasis added]

The e-mail exchanges continued without prompting any change at all in Kinsale's steadfast position.

20.     On January 30, 2014, Kinsale issued a formal denial of coverage letter to Founders.

21.     Shortly after the formal denial of coverage was issued, RT Specialty's Vice President of Claims, Todd Mannschreck ("Mannschreck"), dispatched an e-mail to Kinsale observing that:

> Kinsale's position is that the subject property is not a covered project of premises.  There are three locations on the premises schedule.  A Google or Bing search would reveal that the insured property at 2435 Blackburn Rd., Cleveland, TN is next to the plaintiff's property at 1101 Linda Drive SE, Cleveland, TN and is the property in question.  <u>Hence, we do have a covered premises involved in this loss.</u>  [emphasis added]

The insurance specialist then maintained that:

> Kinsale is of the position that the Exclusion – Construction Activities bars coverage.  Granted, the complaint does allege damages due to construction and development. However, it also alleges the plaintiffs sustained damages because of the insured failed to properly maintain the drainage pipe and drainage ditch (paragraph 28 of the complaint).  <u>This allegation falls within the coverage afforded under the policy as Dennis [Steeves] in my office mentions in his email below.</u> [emphasis added]

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

5

Further e-mails and information were exchanged in the weeks that followed, but Kinsale remained unmoved.

22. On February 19, 2014, the Conrads served their Amended Complaint in the Tennessee proceedings against Plaintiff Founders and others. While the parties and causes of action remained the same, modifications were made to the factual allegations.

23. As far as Kinsale Claims Examiner Driscoll was concerned, the Amended Complaint did not change anything with regard to coverage. She thus issued a second denial letter to Plaintiff Founders on March 14, 2014.

24. The Conrads' neighbor, Patsy Humberd ("Humberd"), filed her own lawsuit against Plaintiff Founders and others raising essentially the same allegations. Claims Examiner Driscoll issued a third declination letter on April 22, 2015 to Founders refusing to provide either indemnity or a defense against Humberd's lawsuit.

25. In a final effort to convince Defendant Kinsale to abide by its coverage obligations, RT Specialty's Vice President and Claims Director e-mailed Supervisor Hoggan on April 23, 2015 and re-explained his position on why the claims involving "the insured property at 2435 Blackburn Rd., Cleveland, TN" fell within the scope of the policy. He further observed that the Construction Activities Exclusion was inapplicable, since Founders had purchased the SouthForke Plaza already completed. Mannschreck concluded by alerting Hoggan that he had been advised by their retail agent that: "This looks like bad faith to me." Hoggan responded four days later without addressing any of the specific arguments for coverage that had been raised.

26. Since Defendant Kinsale was refusing to furnish a defense against the Tennessee Lawsuits, Plaintiff Founders retained Jenne, Scott & Jenne PLLC as defense counsel. The property damage claims against Founders were eventually settled

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

6

following a mediation session for a total of $16,000,00.

**The Arbitration Proceedings**

27.     On or about June 2, 2015, Plaintiff Founders attempted to submit the parties' coverage dispute for resolution through the American Arbitration Association. Plaintiff paid one half of the fees that were required, and otherwise complied with all other obligations imposed.

28.     Through no fault of Plaintiff Founders, Defendant Kinsale failed to pay its share of the arbitration fees resulting in a dismissal of the alternative dispute resolution proceeding on or about September 8, 2015.

29.     Because Defendant Kinsale had successfully precluded the arbitration from proceeding, Plaintiff Founders was forced to file a civil action in the Cuyahoga County Court of Common Pleas on December 14, 2015 seeking (1) a declaratory judgment, (2) establishment of a breach of contract, and (3) damages for bad faith/breach of fiduciary duties.  *Case No. CV 15 855696.*  Defendant proceeded to remove the lawsuit to the U.S. District Court for the Northern District of Ohio on January 14, 2016. *Case No. 1:16 CV 0086.*

30.     Defendant Kinsale reinitiated the alternative dispute resolution proceedings before the American Arbitration Association on February 18, 2016.  This time, the insurer fully paid the requisite filing fees.

31.     In an Opinion and Order that was issued on June 14, 2016, the Federal District Judge ordered the parties' dispute to be returned to arbitration.

32.     Discovery during the arbitration proceeding proved to be far more extensive and cantankerous than is typically the case in such straightforward insurance coverage disputes.   Plaintiff Founders' document requests consisted of just two paragraphs, and were limited to non-privileged portions of the claims and underwriting

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

7

files that pertained to a new coverage defense that had been asserted.    Defendant Kinsale retaliated with a thirty-four paragraph document request demanding disclosure of not only extensive business and tax records, but also every item pertaining to the property damages for which coverage was sought.    Kinsale's Notice of Taking Depositions *Duces Tecum* was also issued, which required Founders' designated corporate representative to produce voluminous financial records.

33.    Plaintiff Founders fully complied with Defendant Kinsale's discovery requests, and the insurer's counsel questioned the company's Secretary and General Legal Counsel, Michael Shore, Esq., for several hours about all aspects of the relief that was being pursued.

34.    Plaintiff Founders' counsel arranged for a local document service company to scan approximately seven thousand pages of responsive records at an estimated cost of $1,200.00.   In an unsuccessful attempt to reach a good-faith accord, Founders offered to share the scanning charges equally with Kinsale.

35.    Notwithstanding Plaintiff Founder's efforts to gather and assimilate the thousands of pages of records that had been sought, Defendant Kinsale proceeded to file not just one, but two, "Emergency" Motions to Compel with "sanctions" on January 30, 2017 and February 23, 2017.   Neither succeeded in establishing a discovery violation against Founders, let alone justifying the imposition of sanctions.

36.    The arbitrators' ruling resolving the second emergency motion directed in part that the insurer could either inspect the documents in the offices of Founders' counsel or bear the cost for producing them in an electronic format.   Following these decisions, Kinsale expressed no interest in either option and abruptly abandoned the thirty-four paragraph document request.

37.    Not long thereafter, an Interim Award of Arbitrators was released finding

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

8

in favor of Plaintiff Founders upon the issue of coverage. *Apx. 0001-4, attached.* Defendant Kinsale was directed to pay "the sum of $16,000.00, which represents the amount paid in settlement of the Tennessee case, plus interest from the date of said payment." *Id., 0003, paragraph 1.* Founders was also awarded its reasonable attorney fees for both the underlying Tennessee lawsuits as well as those incurred in the instant coverage action. *Id., paragraphs 2-3.* Founders' bad-faith claim was dismissed "as not being within the arbitration agreement of the parties." *Id., paragraph 5.*

38.     In a Final Award of Arbitrators dated September 12, 2017, Plaintiff Founders was awarded attorney fees, litigation expenses, and costs against Defendant Kinsale. *Apx. 0005-6, attached.*

39.     Plaintiff Founders' total recovery of compensatory damages and costs in the arbitration proceeding was $101,730.57, which Defendant Kinsale has fully paid. *Apx. 0006.*

**Bad-Faith Insurance Practices**

40.     At all times that Plaintiff Founders was covered under the Policy that had been purchased from Defendant Kinsale, the carrier owed fiduciary obligations of utmost good faith and fidelity to the insured under Ohio law. *Buemi v. Mut. of Omaha Ins. Co.*, 37 Ohio App.3d 113, 116, 524 N.E.2d 183 (8th Dist. 1987); *Heekin v. Mut. of Omaha Ins. Co.*, 8th Dist. Cuyahoga No. 54954, 1989 WL 4157, *3 (Jan. 19, 1989).  It has thus been recognized that:

> In Ohio, an insurance company has a fiduciary responsibility toward its insureds to act in good faith toward its insureds in carrying out its duties under the contract.  (Citations omitted.)

*Red Head Brass, Inc. v. Buckeye Union Ins. Co.*, 135 Ohio App.3d 616, 632, 735 N.E.2d 48 (9th Dist. 1999); *see also Jokic v. State Auto. Mut. Ins. Co.*, 2005-Ohio-7044, ¶ 34 (11th Dist. Lake).

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

9

41.    An insurer doing business in Ohio commits bad faith when no reasonable justification exists for denying a claim.  *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 1994-Ohio-461, 644 N.E.2d 397, paragraph one of the syllabus.

42.    When bad faith has been established, Ohio law permits a recovery of damages against the insurer.  *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983); *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 188, 87 N.E.2d 347, 349 (1949); *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 302–303, 525 N.E.2d 783, 788 (1988); *Furr v. State Farm Mut. Auto. Ins. Co.*, 128 Ohio App.3d 607, 716 N.E.2d 250 (6th Dist. 1998).  The insured need not prove that the insurer acted with a specific intent and is entitled to prevail upon a demonstration that there was no "reasonable justification" for the insurer's decisions. *Zoppo*, 71 Ohio St.3d at 554–555; *Wagner v. Midwestern Indem. Co.*, 83 Ohio St.3d 287, 289-290, 1998-Ohio-111, 699 N.E.2d 507, 510.

43.    Punitive damages can be recovered when the insurer displays a conscious disregard for the rights of the insured. *Buckeye Union Ins. Co. v. New England Ins. Co.*, 87 Ohio St.3d 280, 286-287, 1999-Ohio-67, 720 N.E.2d 495, 501; *Estate of Baxter v. Grange Mut. Cas. Co.*, 73 Ohio App.3d 512, 597 N.E.2d 1157 (5th Dist.1992); *Spadafore v. Blue Shield*, 21 Ohio App.3d 201, 204, 486 N.E.2d 1201, 1205 (10th Dist.1985).  In such circumstances, the plaintiff is also entitled to reasonable attorney fees and litigation expenses. *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 327 N.E.2d 654 (1975).

44.    In the manner aforementioned and to be otherwise established at trial, Defendant Kinsale violated the fiduciary and other legal responsibilities that were owed to Plaintiff Founders by refusing without reasonable justification to furnish the coverage that was due under the Policy.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

10

45.    For example purposes only, Defendant Kinsale's claims adjusters immediately denied the request for coverage without conducting any worthwhile investigations and relying instead upon nothing more than the Notice of Claim and the copy of the Tennessee Complaint that had been furnished.    No meaningful consideration was thereafter afforded to the ensuing warnings of the independent brokers and wholesalers that coverage was indeed owed under the standard commercial general liability policy.    One wholesale agent's Vice President even observed that Kinsale's decision had the appearance of bad faith.

46.    As a direct and proximate result of Defendant Kinsale's denial of the coverage claim without reasonable justification, Plaintiff Founders sustained damages beyond that recovered in the arbitration proceedings.    These losses include, but are not limited to, the substantial time and effort required, and expenses incurred, to arrange for a defense to be provided and otherwise managing and assisting with the defense and settlement of the Tennessee Lawsuits.  Founders incurred further expenses and losses in the effort to enforce its contractual right to coverage, which exceed the legal fees and litigation expenses that were reimbursed only at the conclusion of the arbitration proceedings.

47.    In the manner aforementioned and to be otherwise established at trial, Defendant Kinsale acted maliciously through a conscious disregard for Plaintiff Founder's contractual and legal rights and in a manner that was substantially certain – if not certain – to produce financial harm.

48.    Under principles of Ohio common law, Defendant Kinsale is liable to Plaintiff Founders for all of the compensatory and punitive damages warranted by its failure to honor its coverage obligations under the Policy without reasonable justification.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

11

## **PRAYER**

**WHEREFORE,** Plaintiff, Founders Real Estate Investment Trust, requests judgment against Defendant, Kinsale Insurance Company, for compensatory and punitive damages upon the claim of bad faith insurance practices in excess of $25,000.00, together with reasonable attorney fees, litigation expenses, and the cost of this action.  Trial by jury is demanded upon all issues.

Respectfully Submitted,

*s/ Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
FAX:  (216) 344-9395
pwf@pwfco.com

*Attorney for Plaintiff,*
*Founders Real Estate Investment Trust*

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

12

IN THE AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

Founders Real Estate Investment Trust

        Claimant                Case # 01-16-0000-5503

    -v-

Kinsale Insurance Company

        Respondent

## INTERIM AWARD OF ARBITRATORS

      We, THE UNDERSIGEND ARBITRATORS, having been designated in accordance with the arbitration agreement entered into by the parties and incorporated into the insurance policy that is at issue in the case, and having been duly sworn and having duly heard and considered the proofs and allegations of the parties, hereby find as follows:

1.  Respondent, Kinsale Insurance Company ("Kinsale"), issued its Commercial General Liability Policy to Claimant, Founders Real Estate Investment Trust ("Founders"), which policy was intended to and did provide coverage for the shopping center property owned by Founders in Cleveland, Tennessee.

2.  The Founders shopping center property was fully constructed prior to acquisition of the property by Founders in 1994.  As part of the construction project, a system was constructed to carry surface water from the shopping center property across an adjacent parcel through pipes and/or a drainage ditch and subsequently to a creek.  This system to carry water from the shopping center property was addressed in a Declaration of Easements and Restrictive Covenants entered into by the entity that built the project and the adjacent property owners.  The system was also a subject of an Easement and Development Agreement between Founders and the adjacent property owners.

3.  A lawsuit was filed against Founders and other parties in the Chancery Court for Bradley County, Tennessee by Linda and Steven Conrad ("Plaintiffs") alleging, *inter alia,* that they suffered property damage as the result of the failure of Founders to maintain the storm water drainage ditch and drain.  Plaintiffs alleged that water from the ditch and drain was directed onto their property.

Apx. 0001

4. The lawsuit was tendered to Kinsale by Founders for defense and indemnity. Kinsale disclaimed coverage and refused to defend the case.

5. Founders proceeded to retain counsel and defend the lawsuit. Eventually, the case was settled for a payment from Founders to Plaintiffs of $16,000. Founders incurred and paid legal fees for its representation in the case.

6. This arbitration proceeding was subsequently filed by Founders, seeking recovery from Kinsale of the settlement payment, attorney's fees in the Tennessee case, attorney's fees in the current coverage action, punitive damages and damages for bad faith.

7. The insurance policy issued by Kinsale consisted of the Commercial General Liability Coverage Form with various endorsements. Among the endorsements was the Limitation of Coverage to Designated Project or Premises form that provided, *inter alia*, that:

> "This insurance applies only to "bodily injury", "property damage" and "personal advertising injury" arising out of:
>
> > 1. The ownership, maintenance of use of the premises shown in the Schedule above;
> >
> > 2. The project shown in the Schedule above."

The shopping center property that was the subject of the Tennessee lawsuit was listed on the schedule in the endorsement.

8. The allegations in the Tennessee lawsuit fell within the coverage afforded to Founders in the Kinsale policy. The alleged duty of Founders to maintain the storm water drainage system arose out of Founders' ownership, maintenance or use of the shopping center property and was therefore covered. Simply stated, the duty to provide for storm water runoff is a duty of many, if not all, owners of significant real property developments and it is attendant to ownership, maintenance and use. Kinsale therefore owed to Founders both coverage and defense of the tendered claim.

9. The fact that the drainage ditch and /or drain were not on the Founders property but were instead on the adjacent parcel does not prevent coverage. If Kinsale had wanted to restrict coverage to activities performed on the insured premises, it could have done so, as it did in the policy's Exclusion – Construction Activities. It did not do so in this policy.

10. The Binding Arbitration provision of the policy requires arbitration of "[a]ll disputes over coverage or any rights afforded under this policy . . . . . or the effect of any applicable statutes or common law upon the contractual obligation owed..." The independent tort on insurance bad faith does not fall within the arbitration provision and will therefore not be considered by the Arbitrators. Arbitrator Repicky dissents from this determination and would find for Kinsale on Founders' claim of bad faith.

2

Apx. 0002

11. The Arbitrators considered the other defenses or exclusions asserted by Kinsale and found that they either did not apply or that they lacked merit.

Accordingly, we make the following interim award:

1. Kinsale shall pay to Founders the sum of $16,000, which represents the amount paid in settlement of the Tennessee case, plus interest from the date of said payment.

2. Kinsale shall pay to Founders an amount representing the attorney's fees paid in defense of the Tennessee case, plus interest from the date or dates of payment.

3. Kinsale shall pay to Founders an amount representing the reasonable attorney's fees incurred by Founders in this coverage action, plus interest on any amounts already paid from the date or dates of payment.

4. All interest shall be computed according to Ohio law at the rate or rates set by statute.

5. The claim for bad faith is dismissed from this claim as not being within the arbitration agreement of the parties.

6. The claim for punitive damages is denied insofar as it applies to the claims within the jurisdiction of the Arbitrators. The Arbitrators express no opinion on the claim for punitive damages on the bad faith claim that is not within their jurisdiction

7. In regard to the attorney's fees incurred in the Tennessee action and in this claim, the parties shall have 30 days to exchange documents and confer on the amount of said fees. If they agree on the amounts of fees, they shall notify AAA of the amounts of the fees and a final award shall be issued by the Arbitrators incorporating those amounts. If they cannot agree on the amounts, they shall notify AAA and subsequent proceedings shall be scheduled. Additional deposits for arbitrator's fees will be required if further proceedings are necessary.

8. The administrative filing fee of the AAA totaling $4,000.00 shall be borne equally by the parties. Therefore, Claimant shall reimburse Respondent the sum of $2,000.00 for its share of the administrative filing fee previously incurred by Respondent.

9. The compensation of the Arbitrators shall be as set forth in the Binding Arbitration provision of the policy. Each party shall be responsible for payment of its own arbitrator and the parties shall share equally the fees of the third arbitrator, William D. Dowling

**IT IS SO ORDERED.**

Dated: June 16, 2017

William D. Dowling, Arbitrator

3

Apx. 0003

Robert Rutter / will e mal approved
Bob Rutter, Arbitrator

Thomas Repicky / will email approved
Thomas Repicky, Arbitrator (dissenting as to Item 5 in the award)

4

**Apx. 0004**

IN THE AMERICAN ARBITRATION ASSOCIATION

Founders Real Estate Investment Trust

        Claimant                            Case # 01-16-0000-5503

    -v-

Kinsale Insurance Company

        Respondent

## FINAL AWARD OF ARBITRATORS

      We, THE UNDERSIGEND ARBITRATORS, having been designated in accordance with the arbitration agreement entered into by the parties and incorporated into the insurance policy that is at issue in the case, and having been duly sworn and having duly heard and considered the proofs and allegations of the parties, hereby supplement our Interim Award dated June 16, 2017 and enter our Final Award as follows:

1. The Interim Award of Arbitrators dated June 16, 2017 is hereby incorporated in its entirety. As stated therein, Kinsale shall pay to Founders the sum of $16,000.00, which represents the amount paid in settlement of the Tennessee case, plus interest from the date of said payment.

2. In regard to the attorney's fees and costs incurred by Founders in this action, the Arbitrators have been advised that the parties have agreed that Kinsale is responsible for payment of most of said fees and expenses totaling $80,094.55, but that certain additional amounts remain at issue. In regard to those additional claimed fees and expenses, the Arbitrators find as follows:

   a. Founders claims that it is entitled to attorney's fees of $4,131.75 plus filing fees of $256.95 for filing suit in the Court of Common Pleas, which suit was subsequently removed to federal court and then dismissed by the federal court because of the arbitration provision in the insurance contract. The Arbitrators find that the parties share responsibility for these fees and expenses as a result of their prior conduct. Kinsale shall therefore pay to Founders one-half of the amount, or $2,194.35.

   b. Founders claims that it is entitled to certain amounts paid for electronic research, copying and delivery services. The Arbitrators find that Kinsale is liable for payment of those amounts totaling $1,584.37.

1

c. Founders claims that it is entitled to recover its fees and expenses arising from the current dispute in the amount of $3,714.59. The Arbitrators find that the parties share responsibility for these fees and expenses. Kinsale shall therefore pay to Founders one-half of the amount, or $1,857.30.

d. The total amount of the arbitration award is thus $101,730.57.

e. Founders is entitled to interest on all amounts awarded in this proceeding according to Ohio law. The parties shall compute the exact amount of interest owed.

f. As stated in the Interim Award, Founders is liable to Kinsale for $2,000.00, which amount is one-half of the administrative filing fee of the AAA. This amount shall be a credit to Kinsale on the amount owed pursuant to this Final Award.

g. The compensation of the Arbitrators shall be as set forth in the Binding Arbitration provision of the policy. Each party shall be responsible for payment of its own arbitrator and the parties shall share equally the fees of the third arbitrator, William D. Dowling.

**IT IS SO ORDERED.**

Dated: Sept. 13, 2017

William D. Dowling, Arbitrator

Bob Rutter, Arbitrator / per Email approval

Thomas Repicky, Arbitrator / per Email approval

2

**Apx. 0006**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY DECLARATIONS CHANGES

| Attached To and Forming Part of Policy<br>0100008855-0 | Effective Date of Endorsement<br>01/01/2013 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>Founders Real Estate Investment Trust |
|---|---|---|
| Additional Premium:<br>$0 | | Return Premium:<br>$0 |

**Policy Change Number: 1**

This endorsement modifies insurance provided under the following:

**ALL COVERAGE FORMS**

The following item(s):

| | | | |
|---|---|---|---|
| X | Named Insured | | Insured's Mailing Address |
| | Policy Number | | Company |
| | Effective/Expiration Date | | Insured's Legal Status/Business of Insured |
| | Retroactive Date | | Premium Basis |
| | Additional Interested Parties | | Coverage Form and Endorsements |
| | Limits/Exposures | | Deductibles |
| | Covered Property/Located Description | | Classification/Class Codes |
| | Rates | | Description of Operations |
| | Broker of Record | | Increase/Decrease in Policy Values |
| | Company Fee Amendment | | Location Address |
| | Extended Reporting Period Endorsement | | |

is (are) changed as shown {SEE ADDITIONAL PAGE(S)}:

The above amendments result in a change in the premium as shown above.

| POLICY CHANGES ENDORSEMENT DESCRIPTION |
|---|
| For no change in premium, the following named insured's are added to the policy:<br>Founders Realty, LLC<br>Founders Realty II, LLC<br>Founders Realty III, LLC |

Signed By:

_APM_

(Authorized Representative)

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ADF4004 1112

Page 1 of 1

Apx. 0007

**KINSALE INSURANCE COMPANY**
6802 Paragon Place, Suite 350
Richmond, VA 23230

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Policy Number:** 0100008855-0
**Producer Number:** 16201
**Name and Address:** Westrope
1100 Walnut St., Suite 3200
Kansas City, MO 64106

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| | |
|---|---|
| NAMED INSURED: | Founders Real Estate Investment Trust |
| MAILING ADDRESS: | 23775 Commerce Park Rd<br>Beachwood, OH 44122 |
| POLICY PERIOD: | FROM 01/01/2013 TO 01/01/2014 at 12:01AM at the address of the named insured as shown above |

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | Excluded | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | Excluded | |

| DESCRIPTION OF BUSINESS |
|---|
| DESCRIPTION OF OPERATIONS: Vacant Building, LRO, Office |
| BUSINESS TYPE: TRUST |

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 1 | 1511 S Dixie Blvd, Radcliff, KY 40160 |
| 2 | 2435 Blackburn Rd, Cleveland, TN 37312 |
| 3 | 23775 Commerce Park Rd, Beachwood, OH 44122 |

# NO FLAT CANCELLATIONS

The insurance hereby evidenced is written by an approved non-licensed insurer in the State of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

| CLASSIFICATION AND PREMIUM | | | | | |
|---|---|---|---|---|---|
| CLASS CODE | CLASS DESCRIPTION | BASIS OF PREMIUM | EXPOSURE | RATE | PREMIUM |
| 68606.01 | Vacant Buildings - not factories - Other than Not-For-Profit | per 1,000 Square Feet | 61,164 | 34.45 | $2,107 |
| 61212.01 | Buildings or Premises - bank or office - mercantile or manufacturing (lessor's risk only) - Other than Not-For-Profit | per 1,000 Square Feet | 13,706 | 67.93 | $931 |
| 61226.01 | Buildings or Premises - office - Not Otherwise Classified (For-Profit) | per 1,000 Square Feet | 224 | 66.96 | $15 |

TOTAL PREMIUM (MINIMUM AND DEPOSIT):  $3,053

COMPANY FEE:  $100

**TOTAL PAYABLE AT INCEPTION:**  **$3,153**

POLICY SUBJECT TO AUDIT: No                    AUDIT PERIOD:

| ENDORSEMENTS |
|---|
| Refer to ADF4001, SCHEDULE OF FORMS |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY**

CAS1000 0110
Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 0009

## NOTICE—WHERE TO REPORT A CLAIM

It is important that you report claims or incidents (if incident reporting is permitted under your policy) in writing and directly to Kinsale Insurance Company.  Reporting claims or incidents to your insurance agent or broker is not notice to Kinsale Insurance Company.  Failure to report may jeopardize your coverage under the Policy.  Our contact information is listed below.

**By E-mail:**
Newclaimnotices@kinsaleins.com

**By FAX:**
1-804-482-2762, Attention Claims Department

or

**By Mail:**
Kinsale Insurance Company
Attention: Claims Department
P. O. Box 17008
Richmond, Virginia 23226

**Street Address:**
6802 Paragon Place, Suite 350
Richmond, Virginia 23230

ADF9013 1011                                                        Page 1 of 1

Apx. 00010

# SCHEDULE OF FORMS

| Attached To and Forming Part of Policy<br>0100008855-0 | Effective Date of Endorsement<br>01/01/13 12:01AM as the Named Insured<br>address shown on the Declarations | Named Insured<br>As Shown on Dec Page |
|---|---|---|
| Additional Premium:<br>$0.00 | Return Premium:<br>$0.00 | |

CAS1000-0110 - Commercial General Liability Declarations

ADF9013-1011 - Notice - Where To Report A Claim

ADF4001-0110 - Schedule of Forms

CG0001-1001 - Commercial General Liability Coverage Form

CG0067-0305 - Exclusion- Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information

CAS2002-0110 - Limitation of Coverage to Designated Project or Premises

CAS2004-0110 - Deductible Endorsement

CAS2007-0110 - Common Conditions-Casualty

ADF4002-0110 - Basis of Premium

CAS4018-0411 - Minimum Policy Premium

ADF3006-0110 - Exclusion-Absolute Pollution and Pollution Related Liability-With Hostile Fire Exception

ADF3010-0110 - Exclusion- Nuclear, Biological or Chemical Materials

ADF3011-0110 - Exclusion of Other Acts of Terrorism Committed Outside the United States; Exclusion of Punitive Damages Related to A Certified Act of Terrorism; Cap on Losses From Certified Acts of Terrorism

CAS3009-0110 - Exclusion-Medical Payments

CAS3011-0110 - Exclusion- New Entities (Commercial General Liability)

CAS3018-0110 - Exclusion-Insured vs. Insured

CAS3043-0812 - Additional Policy Exclusions

CAS3069-0110 - Exclusion- Construction Activities

CG2104-1185 - Exclusion- Products/Completed Operations Hazard

CG2167-1204 - Fungi or Bacteria Exclusion

CG2176-0108 - Exclusion of Punitive Damages Related to a Certified Act of Terrorism

IL0021-0908 - Nuclear Energy Liability Exclusion Endorsement (Broad Form)

IL0985-0108 - Disclosure Pursuant to Terrorism Risk Insurance Act

ADF9001-0110 - Kinsale Privacy Policy

ADF9004-0110 - Signature Endorsement

ADF9009-0110 - U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00012

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2000 CG 00 01 10 01

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00013

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

 © ISO Properties, Inc., 2000

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00014

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000              CG 00 01 10 01

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00015

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

© ISO Properties, Inc., 2000

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00016

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000  CG 00 01 10 01

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00017

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00018

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc.,  2000 CG 00 01 10 01

Apx. 00019

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00020

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   .c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense

© ISO Properties, Inc., 2000

CG 00 01 10 01

Apx. 00021

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00022

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00023

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

   © ISO Properties, Inc., 2000

Apx. 00024

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     **(1)** Power cranes, shovels, loaders, diggers or drills; or

     **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

     **(a)** Snow removal;

     **(b)** Road maintenance, but not construction or resurfacing; or

     **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01

Apx. 00025

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   **a.** includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Electronically Filed 01/05/2018 15:02 / / CV 18 891195 / Confirmation Nbr. 1266635 / CLDMK

Apx. 00026

b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    (2) The providing of or failure to provide warnings or instructions.

Apx. 00027

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

| Attached To and Forming Part of Policy 0100008855-0 | Effective Date of Endorsement 01/01/13 12:01AM at the Named Insured address shown on the Declarations | Named Insured As Shown on Dec Page |
|---|---|---|
| Additional Premium: $0.00 | Return Premium: $0.00 | |

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

CG 00 67 03 05 © ISO Properties, Inc., 2004 Page 1 of 1

Apx. 00028

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITATION OF COVERAGE TO DESIGNATED PROJECT OR PREMISES

| Attached To and Forming Part of Policy | Effective Date of Endorsement | Named Insured |
|---|---|---|
| 0100008855-0 | 01/01/13 12:01AM at the Named Insured address shown on the Declarations | As Shown on Dec Page |
| Additional Premium: | Return Premium: | |
| $0.00 | $0.00 | |

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**SCHEDULE**

Premises:     Location 1: 1511 S Dixie Blvd, Radcliff, KY 40160
Location 2: 2435 Blackburn, Rd, Cleveland, TN 37312
Location 3: 23775 Commerce Park Rd, Beachwood, OH 44122

Project:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this policy)

This insurance applies only to "bodily injury", "property damage" and "personal and advertising injury" arising out of:

1.    The ownership, maintenance or use of the premises shown in the Schedule above;

2.    The project shown in the Schedule above.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

CAS2002 0110                                                                                      Page 1 of 1

Apx. 00029

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT

| Attached To and Forming Part of Policy | Effective Date of Endorsement | Named Insured |
|---|---|---|
| 0100008855-0 | 01/01/13 12:01AM at the Named Insured address shown on the Declarations | As Shown on Dec Page |

| Additional Premium: $0.00 | Return Premium: $0.00 |
|---|---|

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

### SCHEDULE

| COVERAGE | AMOUNT AND BASIS OF DEDUCTIBLE | |
|---|---|---|
| | PER CLAIM | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Personal & Advertising Injury | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, combined | $ 1,000 | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" or "personal and advertising injury" however caused):

   **A.** Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury, or any other coverages provided by this policy to pay damages on your behalf, applies only to the amount of damages in excess of any deductible amount(s) stated in the Schedule above as applicable to such coverages. The deductible amount(s) stated above will include all loss payments, adjusting, investigative and legal fees and costs and all other direct costs related to the investigation, defense and settlement of a claim or suit, regardless of whether or not any loss payment is made.

   **B.** We may select a deductible amount on either a per claim or a per "occurrence" basis. Our selected deductible applies to the Coverage and to the Basis of the Deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

     **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

      a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

      b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

      c. Under Personal and Advertising Injury Liability, to all damages sustained by any one person or organization because of "personal and advertising injury liability";

Apx. 00030

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

    **d.** Under Bodily Injury Liability and/or Property Damage Liability Coverage and/or Personal and Advertising Injury Liability, combined, to all damages, injury and medical expenses sustained by any one person or organization as the result of any one "occurrence" or offense.

    If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

    With respect to "property damage", person includes an organization.

  **2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a per "occurrence" basis, that deductible applies as follows:
    a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";
    b. Under Property Damage Liability Coverage, to all damages because of "property damage";
    c. Under Personal and Advertising Injury Liability, to all damages  because of "personal and advertising injury liability";
    d. Under Bodily Injury Liability and/or Property Damage Liability Coverage and/or Personal and Advertising Injury Liability, combined, to all damages, injury and medical expenses as the result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or "offense".

**C.** The terms of this insurance, including those with respect to:
  **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and
  **2.** Your duties in the event of an "occurrence", claim, or "suit" apply irrespective of the application of the deductible amount.

**D.** We may pay any part or the entire deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CAS2004 0110

Apx. 00031

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMON CONDITIONS –CASUALTY

| Attached To and Forming Part of Policy | Effective Date of Endorsement | Named Insured |
|---|---|---|
| 0100008855-0 | 01/01/13 12:01AM at the Named Insured address shown on the Declarations | As Shown on Dec Page |
| Additional Premium: | Return Premium: | |
| $0.00 | $0.00 | |

This endorsement modifies Insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE**

This insurance is amended by adding the following provisions:

**CANCELLATION**

a. The first named insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
b. We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:
   1) Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium; or
   2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.
c. We will mail or deliver our notice to the first named insured's last mailing address known to us.
d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
e. If this policy is cancelled, we will send the first named insured any refund due subject to the minimum earned premium provisions of the policy. If we cancel for reasons other than non-payment of premium, the refund will be pro rata. If we cancel due to non-payment of premium or if the first named insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**NON-RENEWAL—the When We Do Not Renew Condition of the policy is deleted and replaced with the following:**

a. If we elect not to renew this policy we shall mail written notice to the first named insured at the address shown in the declarations. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the policy period.
b. If notice is mailed, proof of mailing will be sufficient proof of notice.

**CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**TERMS, CONDITIONS AND PREMIUMS**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay. On each renewal, continuation or anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and may amend the terms and conditions of the policy in accordance with the rates and rules then in effect.

CAS2007 0110                                                                 Page 1 of 3

Apx. 00032

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SERVICE OF SUIT**

In the event of the failure of the Company to pay any amount claimed to be due under this Policy, the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada. All matters arising under this Policy shall be determined in accordance with the choice of law rules of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

Service of process in any such suit may be made upon the President and Chief Executive Officer of the Company or his designee at the address shown on the Declarations of this Policy. In any suit instituted upon this contract and against the President and Chief Executive Officer of the Company or his designee, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The President and Chief Executive Officer of the Company or his designee are authorized and directed to accept service of process.

Pursuant to any statute of any state, territory or district of the United States of America, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary under this Policy arising out of this contract of insurance. The Company designates the above-named as the person to whom said officer is authorized to mail such process or a true copy of such process.

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**—the Transfer Of Rights Of Recovery Against Others To Us Condition of the policy is deleted and replaced with the following:

If any person or organization to or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us. That person or organization must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

**LEGAL ACTION AGAINST US**—the Legal Action Against Us Condition of the policy is deleted and replaced with the following:

No one may bring a legal action against us under this Policy unless there has been full compliance with all of the terms of this Policy. No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless it is commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the state within which this Policy is issued, such limitation is invalid then any such claims shall be void unless such action, suit or proceeding is commenced within the shortest limit of time permitted by the laws of such state. We will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance.

CAS2007 0110                                                                                     Page 2 of 3

**Apx. 00033**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BINDING ARBITRATION**

All disputes over coverage or any rights afforded under this policy, including whether an entity or person is a named insured, an insured, an additional insured, or entitled to coverage under the Supplementary Payments provisions of this policy or the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association. The Arbitration shall be before a panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator. The American Arbitration Association shall decide any disputes concerning the selection of the Arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

CAS2007 0110                                                                                  Page 3 of 3

Apx. 00034

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## BASIS OF PREMIUM

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100008855-0 | 01/01/13 12:01AM at the Named Insured address shown on the Declarations | As Shown on Dec Page |
| *Additional Premium:* | *Return Premium:* | |
| $0.00 | $0.00 | |

The basis used for determining the premium charge for each classification is indicated in the Classification and Premium section of the Declarations. The definition of each basis of premium is as follows:

A.  Acres

   The total amount of acreage at the insured premises.

   The rates apply per acre.

B.  Admissions

   The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

   The rates apply per 1,000 admissions.

C.  Area

   The total number of square feet of floor space at the insured premises, computed as follows:

   1.  For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

      a.  Courts and mezzanine types of floor openings.
      b.  Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

   2.  For tenants, determine the area they occupy in the same manner as for entire buildings.

   3.  The rates apply per 1,000 square feet of area.

D.  Each

   This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the classification footnotes, such as "per person".

ADF4002 0110

Apx. 00035

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

E.  Flat Charge

A fixed non-variable amount.

F.  Gross Sales

1.  Definition

The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

a.  All goods or products, sold or distributed;
b.  Operations performed during the policy period;
c.  Rentals; and
d.  Dues or fees.

2.  Inclusions

The following items shall not be deducted from gross sales:

a.  Foreign exchange discounts;
b.  Freight allowance to customers;
c.  Total sales of consigned goods and warehouse receipts;
d.  Trade or cash discounts;
e.  Bad debts; and
f.  Repossession of items sold on installments (amount actually collected).

3.  Exclusions

The following items shall be deducted from gross sales:

a.  Sales or excise taxes which are collected and submitted to a governmental division;
b.  Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
c.  Finance charges for items sold on installments;
d.  Freight charges on sales if freight is charged as a separate item on customers invoice;
e.  Royalty income from patent rights or copyrights which are not product sales, and
f.  Rental receipts for products liability coverage only.

4.  Application

The rates apply per $1,000 of Gross Sales.

G.  Payroll

1.  Definition
a.  Payroll means remuneration.
b.  Remuneration means money or substitutes for money.

ADF4002 0110                                                                                                    Page 2 of 5

Apx. 00036